IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SHARON E. KLEIN, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:04-22234-DCN-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Plaintiff filed the complaint in this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 31, 2001, alleging disability as of February 21, 1999 due to back pain, leg pain, and thyroid problems. (R.p. 89). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 19, 2003. (R.pp. 27-61). The ALJ thereafter denied Plaintiff's claim in a decision issued September 11, 2003. (R.pp. 13-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be



reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-four (44) years old when she alleges she became disabled, has a high school education with past relevant work experience as



a car rental manager. (R.pp. 30, 90, 95). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does have a severe impairment, she nevertheless retained the residual functional capacity to perform her past relevant work, and was therefore not disabled. (R.pp. 21-22). Plaintiff asserts that in reaching his decision, the ALJ erred by failing to fully and fairly develop the record in this case, in particular by failing to schedule a supplemental consultative evaluation once it became apparent that Plaintiff's treating physician would not cooperate in the preparation of her case. However, after careful review and consideration of the record and arguments presented, the undersigned finds that there is substantial evidence to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

      Plaintiff testified that her back problems dated to 1986, when she was involved in a serious automobile accident. (R.pp. 31-32). Plaintiff was treated at the Anderson Orthopaedic Clinic, where Dr. Glenn Trent performed back surgery on her in 1996. (R.p. 116). Plaintiff subsequently went to see Dr. Charles Sonu (also of the Anderson Orthopaedic Clinic) on May 18, 1999 (three months after she alleges her condition became disabling), complaining of severe low back pain. Dr. Sonu's records reflect that Plaintiff had a well healed back incision upon examination with no evidence of muscle spasm, normal functioning in her lower extremities, and



only a mild limitation in her range of motion. (R.p. 116).

Dr. Don Bryant began treating the Plaintiff in August 2001. At that time, Plaintiff reported a one year history of nausea and diarrhea, but made no complaints of back pain. (R.pp. 139-141). Examination revealed an enlarged thyroid, diagnostic studies were ordered, and Plaintiff was provided with a prescription for Phenurgan. (R.pp. 140-141). During an office visit on August 29, 2001, Dr. Bryant performed an examination of Plaintiff's thoracic and lumbar spine, which revealed normal range of motion, normal curvature, and no tenderness. Dr. Bryant also found that Plaintiff had a normal gait, although he did note tenderness with palpation of the right thoracic spine with muscle spasm. Plaintiff was diagnosed with thyrotoxicosis[1] with or without goiter, and backache, unspecified. (R.pp. 135-136). A follow-up examination on September 4, 2001 revealed no abnormalities with regard to Plaintiff's cervical, thoracic, or lumbar spine except for tenderness to palpation of the thoracic spine. Plaintiff was diagnosed with disorders of the thyroid, "other malaise and fatigue", generalized abdominal pain, and diarrhea. (R.pp. 133-134). On yet another follow-up examination performed on October 11, 2001, Plaintiff was found to be a "[w]ell nourished, well developed female in no acute distress." Plaintiff's thyroid was found to be normal, as was her spine except for some tenderness to palpation. (R.pp. 131-132). Plaintiff continued to see Dr. Bryant at fairly regular intervals thereafter through March 2002, during which time his medical findings continued to be consistent throughout, although Plaintiff was eventually diagnosed with unspecified acquired hypothyroidism, for which she was prescribed Synthroid. See generally, (R.pp. 122-129).

---

[1] A condition caused by excessive quantities of thyroid hormones. Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1711.

4



After visiting Dr. Bryant on May 10, 2002 (at which time it was recommended that Plaintiff see an orthopedist for her continued complaints of neck and back pain), Plaintiff did not return to see Dr. Bryant until January 14, 2003. Plaintiff complained at that time of increased fatigue associated with her thyroid. (R.pp. 160, 163-165). Examination revealed no restrictions in the rotation of Plaintiff's neck, and inspection of the thyroid revealed a normal thyroid gland. Dr. Bryant recommended consultation with an endocrinologist to assist in maintaining a normal thyroid function, although there is no evidence Plaintiff followed this advice. A musculoskeletal examination was also normal, with the exception of tenderness to palpation on range of motion. (R.pp. 160-162). Dr. Bryant thereafter continued to see the Plaintiff through April 2003, the month before her ALJ hearing. (R.pp. 172-173).

In addition to Dr. Bryant's medical notes, the record also contains medical evaluations from two state agency physicians based on their review of Plaintiff's medical records. On November 5, 2001, Dr. Gerald Fisher prepared a physical residual functional capacity assessment form based on his review of Plaintiff's medical records in which he concluded that Plaintiff could occasionally lift/carry 20 pounds, 10 pounds frequently; stand/walk about 6 hours in an 8 hour work day; sit about 6 hours in an 8 hour work day; and occasionally climb ramps/stairs and ladders, but never scaffolds. (R.pp. 151-158). On April 29, 2002, Dr. Hugh Clarke made these same findings. (R.p. 158). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].



5

After review of the medical records and other evidence in this case, the ALJ concluded that there was "little, if any, evidence to support the claimant's allegation that she is totally unable to work. The evidence consistently demonstrates that the claimant has several mild to moderate symptoms, none of which, either singly or collectively, is of a level of severity to completely preclude the claimant from all work activity." The ALJ further concluded that Plaintiff retained the residual functional capacity to perform light work activity[2], and that she was able to life and carry 20 pounds occasionally, 10 pounds frequently, was able to stand/walk for a maximum total of 6 hours in a work day, and sit for a maximum total of 6 hours in an 8 hour work day. (R.p. 20). Dr. Bryant's medical records support these findings, as do the medical opinions of the state agency physicians who reviewed Plaintiff's medical records. See generally, Craig v. Chater, 76 F.3d 585, 591-596 (4th Cir. 1996) [noting importance of treating physician's opinion]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Smith, 795 F.2d at 345; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. The undersigned does not find any reversible error in the ALJ's treatment or consideration of this medical evidence, or in his discounting Plaintiff's subjective testimony based on the record presented. See Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

6



evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

Plaintiff's argument that the ALJ was required to obtain a consultative examination is also without merit. The ALJ had several years of medical records before him to review, including the records of Plaintiff's treating physician right up to the month prior to the hearing. This record was sufficient to allow the ALJ to make his findings and conclusions in this case. See 20 C.F.R. § 404.1519; Matthews v. Bowen, 879 F.2d 422, 424-425 (8th Cir. 1989); Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).

Finally, the ALJ found that Plaintiff's past relevant work as a car rental manager did not exceed her residual functional capacity, and as she could still perform this past relevant work, she was not entitled to DIB. (R.pp. 20-21). Again, this finding is supported by substantial evidence. Indeed, Plaintiff herself represented that this job required her to only occasionally lift 20 pounds, 10 pounds frequently, which is within the range for light work. (R.p. 90). See SSR 82-61 [an individual will be found to be "not disabled" when it is determined that he or she retains the residual functional capacity to perform her past relevant work].

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision

7



(i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

October 13, 2005